# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| **MICHAEL O. PANSINI et al.,** | : | |
| | : | |
| *Plaintiffs*, | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 17-3948 |
| **THE TRANE COMPANY et al.,** | : | |
| *Defendants*. | : | |

## M E M O R A N D U M

PRATTER, J.                                                                                                      MARCH 6, 2018

### INTRODUCTION

Michael and Elisa Pansini can hardly be accused of blowing hot and cold as to the heating and air conditioning merits of their new Trane HVAC unit. After their unit did not operate as allegedly promised, the Pansinis sued the unit's manufacturer and seller for breach of contract, breach of warranty, and fraudulent misrepresentation.

The defendants have moved to dismiss the counts of statutory and common-law fraudulent misrepresentation based on (1) arguments of insufficient pleadings and (2) preclusion by the economic loss doctrine and the gist of the action doctrine.

The Court concludes that the amended complaint is sufficiently pleaded. However, the Court dismisses the fraud-based counts on the basis of the gist of the action doctrine.

### FACTS

In 2014, the Pansinis were shopping for a heating, ventilating, and air conditioning unit for their home. Initially, they wanted to replace their old unit with the same model. However, salesman Brian McAleer convinced them otherwise. Mr. McAleer told the Pansinis that a new Trane unit would be quiet, cost-efficient, and capable of independently controlling the temperature of each room in their house. He touted the unit as vetted and ready for use, "top of

1

the line" and the "best system on the market." The Pansinis claim they relied on Mr. McAleer's promises and bought the new Trane unit.

The Trane unit did not operate as promised. Apparently, it was loud, costly, and did not independently control the temperature in each room — despite several visits from defendants' employee John Zdon. At Mr. Zdon's suggestion, the Pansinis installed new ducts that ventilated excess hot air to their attic. This attempted fix wasted energy and money, and also failed to solve the underlying problems.

In reality, the defendants never properly tested the new Trane model which they pushed on the Pansinis. The couple alleges that the defendants used them as "guinea pigs" for field-testing the new units and remotely monitored the unit's performance.

## PROCEDURAL HISTORY

The Pansinis filed this suit in state court against the Trane Company, Ingersoll Rand, Ferguson Enterprises, Lyon Conklin Company, and Ferguson Lyon Conklin.[1] The defendants removed the case to this court based on diversity jurisdiction and filed a motion to dismiss.

The Pansinis then filed the amended complaint currently before the Court. Now, the defendants have filed two motions to dismiss — one from Ferguson Enterprises and one from Trane and Ingersoll Rand.

Even though the amended complaint contains 21 counts, there are really only 7 counts repeated against three distinct groups of defendants: (a) Trane and Ingersoll Rand, (b) Ferguson, and (c) Lyon Conklin Company and Ferguson Lyon Conklin. The seven counts are:

1. Breach of Warranty;
2. Violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*;
3. Breach of Implied Warranty of Fitness;

---

[1] The amended complaint does not precisely delineate the roles of the defendants or of Messrs. McAleer and Zdon.

4. Violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL), 13 P.S. § 201-1 *et seq.*;
5. Revocation;
6. Breach of Contract; and
7. Fraudulent Misrepresentation.

In the motions to dismiss before this Court, counts 4 and 7 — for UTPCPL violations and fraudulent misrepresentation — are primarily at issue.

### STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citation and internal quotation marks omitted).

In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters. For one, the Court "must consider only those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994). Also, the Court must accept as true all reasonable inferences emanating from the allegations, and view those facts and inferences in the light most favorable to the nonmoving party. *See Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010).

That admonition does not demand that the Court ignore or even discount reality. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678. If a claim "is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008).

## ANALYSIS

The defendants challenge the amended complaint both on sufficiency grounds and on grounds of the common-law doctrines of economic loss and gist of the action.

The Court reaches three overall conclusions. First, challenges based on legal doctrines notwithstanding, the amended complaint is sufficiently pleaded. Second, the economic loss doctrine does not apply to claims under the UPTCPL, but that the doctrine applies to (and precludes) the Pansinis' claim for fraudulent misrepresentation. Third, the gist of the action here is contract, not tort, providing an independent reason to dismiss the fraud-based claims.[2]

**I.  Sufficiency of the Pleadings**

The defendants challenge the sufficiency of the pleadings in (A) the entire complaint, (B) the count for breach of express warranty, and (C) the fraud-related counts. For the reasons that follow, each count is sufficiently pleaded.

### A. *Specificity of the Entire Complaint*

Trane and Ingersoll Rand lob an initial volley, targeted at the entire amended complaint, arguing that the amended complaint lacks specificity. As noted, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim for relief under the Federal Rules of Civil Procedure. *Ashcroft*, 556 U.S. at 678.

---

[2] In addition, the Court dismisses two parties from this case because they do not legally exist. Lyon Conklin & Company and Ferguson Lyon Conklin do not belong as defendants in the case. Lyon Conklin is a fictitious name under which Ferguson sometimes conducts business, and Ferguson Lyon Conklin was dissolved in 1999. *See* Aff. of David Meeker, Mot. to Dismiss Ex. A. Therefore, the Court will dismiss them from the case.

Trane and Ingersoll point out that all of the "defendants" are lumped together in the complaint. They cite to this Court's decision in *In re Processed Egg Products Antitrust Litigation*, 821 F. Supp. 2d 709 (E.D. Pa. 2011), for the proposition that such lumping can be grounds for dismissal. *See id.* at 745. But in *Egg Products*, this Court found that lumping together a group of defendants made it impossible to assign liability to any one defendant. Here, by contrast, the Pansinis named two specific employees of Ferguson — Brian McAleer and John Zdon — who visited their house on several specific dates. In other words, the amended complaint provides enough information for the defendants to know whose supposed promises harmed the Pansinis, the content of those promises, and when those promises were made. Therefore, the Court will not dismiss the entire amended complaint.

### B. *Specificity of the Count for Breach of Express Warranty*

Trane and Ingersoll Rand also challenge the pleadings of the count for breach of express warranty. In particular, they point out that the complaint does not state which defendant made which express warranty. But, as above, the Pansinis have named two specific employees — Brian McAleer and John Zdon — who promised that the unit was quiet, cost-efficient, and capable of independently controlling the temperature of each room in the house. Therefore, the Court does not dismiss the count for breach of express warranty.

### C. *Specificity of Fraud-Related Counts*

The two fraud-related counts in the amended complaint are fraudulent misrepresentation and violations of the Pennsylvania UTPCPL. Trane and Ingersoll Rand challenge both counts, while Ferguson has challenged only the count for fraudulent misrepresentation. Both counts have been sufficiently pleaded.

### 1. *Heightened Pleading Requirements for Fraud*

Federal Rule of Civil Procedure 9 governs pleading requirements for fraud. The party alleging fraud "must state with particularity the circumstances constituting fraud," though mental states such as malice, intent, or knowledge "may be alleged generally." Fed. R. Civ. P. 9(b). Here, that rule means that the Pansinis must plead "the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into [their] fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

### 2. *Fraudulent Misrepresentation*

In Pennsylvania, the elements of fraudulent misrepresentation are: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994); *see also Bouriez v. Carnegie Mellon Univ.*, 585 F.3d 765, 771 (3d Cir. 2009).

The defendants challenge the first and fourth elements of the cause of action.

**First**, they argue that the amended complaint does not allege any statements or actions that constituted the fraud. The general rule is that a plaintiff "must allege who made a misrepresentation to whom and the general content of the misrepresentation." *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004). According to the defendants, nothing in the amended complaint suggests that this case is anything more than a run-of-the-mill contract dispute.

On the one hand, the allegations are not the paragon of clarity. For example, the amended complaint does not specify which defendant manufactured the unit, which defendant sold the unit to the Pansinis, when the Pansinis bought the unit, and who installed it.

On the other hand, the amended complaint names two employees — Brian McAleer and John Zdon — and explains that the employees promised that the unit would be quiet, cost-efficient, and capable of independently controlling the temperature of each room in the house. Further, the amended complaint includes the dates when the Pansinis communicated with Mr. McAlee and Mr. Zdon. *See* Am. Compl. ¶¶ 24, 39, 41, 43.

On balance, the Court finds that the Pansinis have managed to satisfy their burden as to this element.

**Second**, the defendants argue that the amended complaint is silent as to the fourth element of fraudulent misrepresentation — the defendants' *intent* to defraud the Pansinis. How, the defendants ask, is the bare failure to provide a working air conditioning system evidence of malice? In response, the Pansinis note that the state-of-mind element is best left for the summary judgment stage. *See Pryor v. NCAA*, 288 F.3d 548, 565 (3d Cir. 2002).

The Court finds that the Pansinis have satisfied their burden as to this element as well. Enough is alleged in their amended complaint to support the inference that the defendants never believed their own alleged promises, particularly about noise, cost-efficiency, and temperature control.

### 3. UTPCPL

The alleged UTPCPL violation is predicated on the count for fraudulent misrepresentation. Thus, as to sufficiency of the pleadings, the two counts rise and fall together. Both must meet Rule 9's heightened pleading standards. *See Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 498 n.33 (3d Cir. 2013). Because the Court concludes that the fraudulent misrepresentation count is sufficiently pleaded, the UTPCPL violation claim is as well.

## II. Economic Loss Doctrine

Trane and Ingersoll Rand challenge the counts for fraudulent misrepresentation and violations of the UTPCPL on the basis of the economic loss doctrine. Under Pennsylvania's version of the doctrine, "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical or property damage." *Adams v. Copper Beach Townhome Communities, L.P.*, 816 A.2d 301, 305 (Pa. Super. Ct. 2003).

The Court concludes that (1) the Pansinis have not suffered property damage, (2) the economic loss doctrine does not apply to claims under the UTPCPL, and (3) the doctrine applies to (and bars) claims for fraudulent misrepresentation.

### A. *The Pansinis have not alleged property damage for purposes of the economic loss doctrine.*

The Pansinis argue that they have alleged "property damage" sufficient to remove this case from the purview of the economic loss doctrine, because they had to open up the walls of their home to install the unit, perform maintenance on the unit, and remove the unit.

The Court rejects this approach to the property damage requirement. The Pansinis conflate physical property damage with physical work needed to fix a purely economic problem. Hyperbolically describing this physical work as "ripping out" the unit or "ripping up" their home does not create "property damage" for these purposes. A faulty HVAC unit causing homeowners to hire a technician is a far cry from faulty dry ice causing chicken products to be contaminated, *see Keystone Foods, LLC v. Atl. Dry Ice, LLC*, No. 15-cv-756, 2015 WL 4130686, at *6–7 (E.D. Pa. July 9, 2015); leaky roof panels causing water damage inside a home, *see Gadley v. Ellis*, No. 3:13-cv-17, 2015 WL 2345619, at *6 (W.D. Pa. May 15, 2015); and a careless construction causing a warehouse to collapse and destroy the goods inside, *see 2-J Corp. v. Tice*, 126 F.3d 539, 544 (3d Cir. 1997).

8

### B. The economic loss doctrine does not apply to the claims for violations of the UTPCPL.

The Third Circuit Court of Appeals predicted in 2002 that the economic loss doctrine would apply to claims under the UTPCPL, *see Werwinski v. Ford Motor Co.*, 286 F.3d 661, 680–81 (3d Cir. 2002), but subsequent decisions of the Pennsylvania Superior Court have held that it does not, *see Knight v. Springfield Hyundai*, 81 A.3d 940, 952 (Pa. Super. Ct. 2013); *Dixon v. Northwestern Mutual*, 146 A.3d 780 (Pa. Super. Ct. 2016). These pronouncements remain as the latest word on the subject by an appellate court in this Commonwealth.

In *Busch v. Domb*, this Court decided to adopt the legal reasoning of the state superior courts in order to avoid "the perils of forum shopping." *See Busch v. Domb*, No. 17-CV-2012, 2017 WL 6525779, at *5 (E.D. Pa. Dec. 21, 2017). As the Court explained:

> "The current divergence between the federal and state courts" on the question whether a UTPCPL claim survives the economic loss doctrine "means that the outcome of a case is currently a function of forum." *Landau*, 223 F. Supp. 3d at 414. The Third Circuit Court of Appeals has instructed district courts to avoid such a situation: "in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court [should] be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." *Chamberlain v. Giampapa*, 210 F.3d 154, 158–59 (3d Cir. 2000) (quoting *Guar. Trust Co. v. York*, 326 U.S. 99, 109 (1945)).

*Id.* The Court concluded that the Third Circuit's 2002 opinion had been rendered stale by subsequent state decisions. *Cf. Largoza v. Gen. Elec. Co.*, 538 F. Supp. 1164, 1166 (E.D. Pa. 1982) ("[I]t is axiomatic that this court is bound by a decision of the Third Circuit predicting Pennsylvania law unless the state supreme court issues a contrary decision or *it appears from a subsequent decision of the appellate courts that the court of appeals erred*.") (emphasis added); *Golden Gate Nat'l Senior Care, LLC v. Beavens*, 123 F. Supp. 3d 619, 630 n.6 (E.D. Pa. 2015)

("I will follow the Third Circuit's interpretation of Pennsylvania law unless it is inconsistent with a subsequent holding of the state Supreme or intermediate appellate courts.").

Therefore, the Court concludes, once again and for the same reasons, that the economic loss doctrine does not apply to claims under the UTPCPL.

### C. *The economic loss doctrine precludes the claim for fraudulent misrepresentation.*

In this subsection, the Court first explains why the economic loss doctrine applies to claims for fraudulent misrepresentation. Next, the Court concludes that, in this case, the fraudulent-inducement exception to the economic loss doctrine does not apply.

#### 1. *The economic loss doctrine applies to claims for fraudulent misrepresentation.*

As in the UTPCPL context, the Third Circuit Court of Appeals predicted that the economic loss doctrine would operate to preclude claims for fraudulent misrepresentation. *See Werwinski*, 286 F.3d at 675. But unlike the UTPCPL context, no state appellate court has undermined that prediction: "the law in Pennsylvania with respect to the application of the economic loss doctrine to intentional fraud actions [was] unsettled" in 2002, *id.*, and remains so. Thus, with no state court decision to the contrary, the Court is bound by the Third Circuit's prediction in *Werwinski* that the economic loss doctrine applies to claims for fraudulent misrepresentation.

#### 2. *The fraudulent-inducement exception to the economic loss doctrine does not apply.*

Because the economic loss doctrine applies to fraudulent misrepresentation claims, it operates to preclude the Pansinis' claim here.

The Pansinis argue that this case falls into an exception to the economic loss doctrine: if the fraud was committed to *induce* the contract, then the doctrine does not apply. *See, e.g.*, *Reilly Foam Corp. v. Rubbermaid Corp.*, 206 F. Supp. 2d 643, 658 (E.D. Pa. 2002). The classic

example is a company that "falsely misrepresented its financial condition" in order to "induce another company to enter into an agreement with it." *Whitaker v. Herr Foods, Inc*., 198 F. Supp. 3d 476, 490 (E.D. Pa. 2016).

Here, however, the alleged fraud was "intrinsic to the contract," meaning that the representations were about the air conditioning unit. *See id.* The alleged misrepresentations — that the unit would be quiet, cost-efficient, and capable of independently controlling the temperature of each room in the house — concerned the subject matter of the eventual contract. Because the misrepresentations "relate[] to the quality and characteristics of the product[] purchased from [the defendants]," *see id.* at 491, they are intrinsic to the contract, and the claim for fraudulent misrepresentation is barred by the economic loss doctrine.

### III.  Gist of the Action

Trane and Ingersoll Rand argue that the claim for fraudulent misrepresentation is also barred by the gist of the action doctrine. That doctrine "precludes a plaintiff from recasting ordinary breach of contract claims into tort claims." *Air Prods. & Chems., Inc. v. Eaten Metal Prods., Co.*, 256 F. Supp. 2d 329, 340 (E.D. Pa. 2003). Whereas the economic loss doctrine concerns the nature of the damages sought, the gist of the action doctrine concerns the source of the defendants' duties to the plaintiff. As the Pennsylvania Supreme Court has put it:

> If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract — i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract — then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

*Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68 (Pa. 2014). Here, the obligation to provide a certain kind of air conditioning unit — one that was quiet, cost-efficient, and capable of independently controlling the temperature of each room in the house — is not a broad social duty, and was instead imposed by the contract. *Cf. Brenco Oil, Inc. v. Blaney*, No. CV 17-3938, 2017 WL 6367893, at *3 (E.D. Pa. Dec. 13, 2017) (concluding that the gist of a former client's complaint against its law firm was tort, not contract, when the firm "perform[ed] a specific task under the contract," but did so carelessly). Given that this case does not concern any municipal noise control regulations, there is no general social duty at issue here to provide a quiet air conditioning unit.

Although the Pansinis allegedly purchased the unit only because it was promised to be "top of the line," that promise was part of the defendants' sales pitch and was incorporated into the contract. To conclude that the gist of this case sounds in tort would open the door to absurd results: a claim would exist for fraudulent (or at least negligent) misrepresentation for every promise made during contract negotiations, incorporated into a contract, and subsequently breached.

The Pansinis analogize to *Mendelsohn, Drucker & Associates v. Titan Atlas Manufacturing*, 885 F. Supp. 2d 767 (E.D. Pa. 2012). But that case was a classic example of fraud in the inducement: a client induced its law firm to keep providing legal representation by making fraudulent promises that it was about to pay its overdue legal fees. *Id.* at 790. The fraudulent misrepresentation in that case violated a "dut[y] of honesty imposed by society" — the duty not to defraud another into entering a contract. *Id.* And unlike this case, the *Mendelsohn* promise of forthcoming payment on old legal fees, made to induce the law firm to enter into a new legal-services contract, was not incorporated into the new contract.

Therefore, the gist of the action doctrine bars the Pansinis' claim for negligent misrepresentation. By extension, it also bars the claim for violations of the UTPCPL. *Cf. Dixon*, 146 A.3d at 788–90 (analyzing UTPCPL claims under the gist of the action doctrine); *Knight*, 81 A.3d at 950–51 (same).[3]

## CONCLUSION

For the foregoing reasons, the motions to dismiss are granted in part and denied in part. An appropriate order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[3] Without a fraud-based hook, the claim for punitive damages must be dismissed. *See Hart v. Arnold*, 884 A.2d 316, 341 (Pa. Super. Ct. 2005) ("[P]unitive damages are not recoverable merely for breach of contract.").

13