IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| **MICHAEL O. PANSINI et al.,** | : | **CIVIL ACTION** |
| *Plaintiffs*, | : | |
| v. | : | |
| | : | |
| **THE TRANE COMPANY et al.,** | : | **NO. 17-3948** |
| *Defendants*. | : | |

**M E M O R A N D U M**

PRATTER, J.                                                                                                                                             MARCH 21, 2019

This case arises out of Michael O. Pansini's and Elisa Pansini's purchase of an allegedly defective heating and air conditioning system for their home. The defendants—the Trane Company, Ingersoll Rand, and Ferguson Enterprises Inc.—filed motions for summary judgment, arguing that the Pansinis' remaining claims (including claims for breach of warranty and breach of contract) should be dismissed because—without expert evidence supporting the plaintiffs' claims that the HVAC System is defective or establishing damages—they fail as a matter of law. The defendants also argued that the plaintiffs' claims for breach of contract should be dismissed because the parties do not have a contractual relationship.

In response, and without leave from the Court, the plaintiffs filed an untimely expert report to try to support their claims requiring a defect and argued that—on the basis of the late report—the motions for summary judgment should be denied. In reply, the defendants asked the Court to exclude the plaintiffs' untimely expert report and argued that—even if the Court admitted the expert report—the plaintiffs' claims fail as a matter of law. Although the Court concludes that the plaintiffs' delay and failure to effectively communicate with the Court and the defendants was not substantially justified and represented a disappointing lack of respect for the applicable rules,

policies, and procedures of the Court with respect to pre-trial activities and trial preparation, exclusion of the expert report is too harsh in light of certain appellate level indulgence of such conduct. Rather, the Court will: (1) admit the expert report; (2) give the defendants time to depose the Pansinis' expert at the plaintiffs' expense for counsels' reasonable preparation and attendance at such a deposition and/or have their own experts inspect the HVAC System and submit expert reports;[1] and (3) allow the defendants to file supplemented motions for summary judgment and/or *Daubert* motions following this additional discovery. Consequently, in the interest of ruling on summary judgment with the benefit of a complete record, the Court will deem the defendants' pending motions for summary judgment moot to the extent they rely on the plaintiffs' lack of evidence supporting the defective nature of the HVAC System or establishing damages. However, because the plaintiffs' breach of contract claims are entirely duplicative of their breach of warranty claims, the Court will now dismiss the breach of contract claims.[2]

## BACKGROUND

In 2014, the Pansinis were building an addition to their home in Villanova, Pennsylvania, including a heating and air conditioning system. They hired Marvin E. Kanze, Inc. to serve as the HVAC subcontractor. Thereafter, Aaron Kanze, the president of Marvin E. Kanze, Inc., contacted a Ferguson employee, Brian McAleer, and requested that Mr. McAleer assist him in presenting the Trane TrueComfort variable speed system (the "HVAC System") to Mr. and Mrs. Pansini.[3]

---

[1] The Court may also consider an application by the defendants to order the plaintiffs to defray some or all of any additional expert-related expense the defendants may incur because of these developments.

[2] The defendants raised this issue during oral argument, and the parties were permitted additional time to brief all issues discussed.

[3] Ferguson is Trane's exclusive dealer in the subject geographical area.

In February 2014, Mr. McAleer, who was wearing a Trane uniform, traveled to the Pansini home with Mr. Kanze. In his sworn affidavit, Mr. Pansini states that Mr. McAleer "offered to sell [Mr. Pansini] the New TRANE HVAC System and in order to persuade [Mr. Pansini] to accept his offer for [Mr. Pansini] to purchase it, promised and warranted that the system could independently control and vary temperatures from room to room, was economically the most efficient unit on the market, [and] was extremely quiet." Exhibit B to the Plaintiffs' Response in Opposition to Ferguson's Partial Motion for Summary Judgment (Doc. No. 69) (hereinafter "Pansini Affidavit"), at ¶ 12. Mr. Pansini claims that he accepted the offer "and agreed to purchase the New TRANE HVAC System for its fair market price." *Id.* at ¶ 14. He further claims that it was his "understanding that [he] was purchasing the New TRANE HVAC System by and through Brian McAleer, the TRANE representative[,] that would be installed by Marvin E. Kanze, Inc." *Id.* at ¶ 14.

In April 2014, Kanze memorialized an order the Pansinis placed with Kanze to supply and install various HVAC components manufactured by Trane and other companies not involved in this case. *See* Exhibit D to Trane and Ingersoll Rand's Motion for Summary Judgment (Doc. No. 75-5). Kanze then purchased the HVAC components from Ferguson.[4] *See* Exhibit E to Trane and Ingersoll Rand's Motion for Summary Judgment (Doc. No. 75-5). Although the Ferguson invoice identifies Kanze as the purchaser, it also identifies the Pansinis as the "Job Name" and "Customer Order Number." *Id.*[5]

---

[4] The invoice is from "Lyon Conklin & Co., Inc." Ferguson admits that it does business under the fictitious name "Lyon Conklin & Co., Inc.," and that it sold Kanze the HVAC components at issue.

[5] The invoice misspells the plaintiffs' last name as "Pancini."

Kanze then installed the HVAC System in the Pansini home. According to the plaintiffs, the HVAC System does not operate as promised and is defective. The HVAC System is allegedly loud, costly, does not control the temperature in specific rooms, and—at times—fails to activate at all. Originally, the Pansinis worked with employees from both Ferguson and Trane to get the HVAC System working properly. However, these efforts were unsuccessful, and this lawsuit followed.

The Court previously dismissed the Pansinis' claims for violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Laws and for fraudulent misrepresentation. Doc. No. 39. Currently pending before the Court are the defendants' motions for summary judgment on the remaining claims: (1) breach of implied and express warranties; (2) violations of the Magnuson-Moss Warranty Act; (3) revocation; and (4) breach of contract. The Court held oral argument on the pending motions and whether to exclude the plaintiffs' untimely expert report. The defendants submitted supplemental briefing at the Court's invitation.

## DISCUSSION

### I. The Court Will Not Exclude the Plaintiffs' Untimely Expert Report

#### A. *Relevant Facts*

Pursuant to the Court's Amended Scheduling Order, the plaintiffs were to identify and submit the curriculum vitae for all expert witnesses on liability and/or damages and serve their reports to the defendants on or before July 31, 2018. Doc. No. 49 at ¶ 3. Expert depositions were to be taken on or before September 21, 2018. *Id.* at ¶ 5. And any *Daubert* and/or dispositive motions were to be filed on or before October 19, 2018. *Id.* at ¶ 6.[6] The plaintiffs did not identify

---

[6] Originally, the plaintiffs' deadline to identify expert witnesses and serve their reports was June 15, 2018, expert depositions were to be taken on or before August 10, 2018, and the deadline

4

any experts or serve an expert report within any of these deadlines. Nor did they request from either the Court or the defendants an extension to do so.

On October 19, 2018, the defendants timely filed the pending motions for summary judgment, relying on the fact that the Pansinis did not identify any expert witnesses. About two weeks later, the plaintiffs asked the Court for a 30-day extension to respond to the motions for summary judgment because the plaintiffs' lead counsel was dealing with serious medical issues. The Court granted the request for an extension. Doc. No. 77. However, at that time, the plaintiffs did not mention anything at all about filing an untimely expert report.

One month later, without asking the Court for leave to do so, the plaintiffs' served the defendants with the "Expert Engineering Report" of Klas C. Haglid, a professional engineer and architect specializing in HVAC work. Then, another five days later, on December 5, 2018, the plaintiffs attached their untimely expert report to their responses to the motions for summary judgment, again without requesting leave from the Court to do so. The Pansinis claim that Mr. Haglid's report shows that the HVAC System "malfunctions, is defective, was used as intended, and that there are no other reasons for the [HVAC System] being defective and malfunctioning." In the report, Mr. Haglid estimates that removing and replacing the HVAC System will cost the plaintiffs $1,029,383.60.

Mr. Haglid's report appeared in this case four months after the deadline to identify experts and about a month-and-a-half after the deadline for *Daubert* and dispositive motions. Consequently, the defendants argue that the plaintiffs' expert report is "unacceptably late" and that the defendants are prejudiced because they relied on the fact that no experts had been identified in

---

for *Daubert* and dispositive motions was August 31, 2018. Doc. No. 34. However, the Court extended these deadlines at the request of the parties.

preparing their motions for summary judgment. In turn, the Pansinis provide their own narrative, arguing that the untimely expert report should be excused because a serious (and confidential) medical event allegedly prevented visitors from entering the Pansini home (and thereby prevented experts from inspecting the HVAC System).[7] Although these events do not excuse the plaintiffs' untimely expert report or their failure to communicate effectively with the Court and the defendants, the Court reluctantly concludes that the exclusion of Mr. Haglid's report on these grounds is unwarranted because the prejudice to the defendants can adequately be overcome.

### B. *Legal Standard*

Pursuant to Fed. R. Civ. P. 26(a)(2)(D), expert disclosures and reports must be made "at the times and in the sequence that the court orders." The Court may impose sanctions if a party does not comply with these requirements. Fed. R. Civ. P. 37(c)(1). Specifically, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." *Id.*

The Third Circuit Court of Appeals has instructed that in making this determination, courts should consider several factors: "(1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified; (2) the ability of that party to cure the prejudice; (3) the extent to which [admitting the evidence] would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or willfulness in failing to comply with the District

---

[7] During oral argument, the plaintiffs' counsel described this event to the Court *in camera*. The plaintiffs' counsel asked that this information remain confidential, and the portion of the transcript in which the plaintiffs' counsel discussed this event was sealed. At this time, the Court will respect the plaintiffs' request to keep the event confidential, other than to dispel any notion that there were any communicable disease issues extant in the Pansini home at the time or any structural dangers lurking on the property. Therefore, the Court refers to it generally as a serious and confidential medical event experienced by one of the plaintiffs.

6

Court's Order." *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997). In addition, courts should consider "the importance of the excluded [evidence]." *Id.*

"The exclusion of critical evidence is an extreme sanction, not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence." *Id.* (citations and internal quotations omitted); *see also Montgomery v. Mitsubishi Motors Corp.*, 448 F. Supp. 2d 619, 633 (E.D. Pa. July 12, 2006) ("[E]xclusion of evidence for this reason . . . is an extreme sanction that is rarely imposed") (citation and quotations omitted). Where the evidence under consideration is critical, courts should consider "less drastic sanctions," such as the extension of discovery with costs taxed to the guilty party. *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 905 (3d Cir. 1977) (holding that the district court abused its discretion by excluding the testimony of an important expert witness because less drastic sanctions were available).

Courts in this district faced with similarly untimely expert reports at the summary judgment stage have postponed summary judgment, extended discovery, and given the prejudiced party time to depose the untimely disclosed expert and/or find an expert of their own. *See e.g. Ciocca v. BJ's Wholesale Club, Inc.*, Civ. No. 04-5605, 2011 U.S. Dist. LEXIS 90067, at *12-16 (E.D. Pa. Aug. 12, 2011) (not excluding unjustifiably late expert report because the testimony sought to be excluded was of great importance, the trial date had not yet been set, and any prejudice faced by the defendant could be cured by extending discovery); *Nippo Corp./International Bridge Corp. v. Amec Earth & Envtl.*, Civ. No. 09-0956, 2011 U.S. Dist. LEXIS 34994, at *24 (E.D. Pa. Mar. 30, 2011) (despite recognizing that an expert report was filed unjustifiably late, the court gave the filing party an opportunity to submit a supplemental version of the report that complied with Rule 26(a)(2), granted an extension of expert discovery, and reserved a ruling on summary judgment);

*Soufflas v. Zimmer, Inc.*, 474 F. Supp. 2d 737, 745 (E.D. Pa. Feb. 21, 2007) (not excluding a late expert report because "the case [had] not yet been listed for trial and Defendant [would] be afforded ample time to procure an expert in rebuttal or to have its experts supplement their reports.").

In contrast, courts have excluded untimely disclosed experts when faced with a rapidly approaching, set trial date, *see Vorhes v. Mittal Steel USA, Inc.*, Civ. No. 06-1130, 2009 U.S. Dist. LEXIS 28906, at *12–13 (W.D. Pa. Apr. 6, 2009) (excluding an untimely disclosed expert witness where the expert was disclosed less than three weeks before trial), or where there were aggravating circumstances indicating bad faith. *See SuperMedia LLC v. Morley*, Civ. No. 12-2329, 2014 U.S. Dist. LEXIS 143118, at *29 (E.D. Pa. Oct. 8, 2014) (excluding untimely expert report because, among other reasons: (1) defense counsel assured plaintiff's counsel in an email that no expert report existed prior to its submission; (2) the court suspected that defense counsel fraudulently backdated the report; and (3) the defendant failed to provide the documents underlying the expert's opinion).

The facts in *Ciocca* most closely align with the facts here. In *Ciocca*, the plaintiff brought breach of warranty claims, among others, against the defendants for injuries he suffered from an allegedly defective snowblower. 2011 U.S. Dist. LEXIS 90067, at *4–5. One of the defendants filed a motion for summary judgment, arguing, among other things, that the plaintiff could not prove its case without expert testimony showing that the snowblower was defective. *Id.* at *6. Thereafter, the plaintiff submitted an untimely expert report purportedly demonstrating the defects of the snowblower. *Id.* The defendant, in turn, argued that the expert report should be excluded as untimely. *Id.*

Despite recognizing that the untimely expert report was not "substantially justified," the court did not exclude the report. *Id.* at *9. The court first noted that "the importance of the

testimony sought to be excluded [was] great" as it was the plaintiff's only evidence of defect. *Id.* at *9–10. Next, although recognizing that the defendant suffered some prejudice because the untimely expert report would negatively affect its motion for summary judgment and the defendant would not be able to depose the expert or find its own expert within the discovery deadlines, the court stated that "this prejudice is one that is within our power to cure by granting Defendant additional time within which to respond in full to the [expert's report], depose [the expert], or obtain its own expert." *Id.* at *11–13. The court also noted that admitting the expert report would not unduly disrupt the trial of the case because no trial date certain had been set. *Id.* at *13. Finally, the court concluded that although the facts evidenced "questionable practices on the part of Plaintiff's counsel in failing to communicate either with Defense counsel or [the court]," and failing to request an extension of the deadline, the plaintiff's conduct did not rise to the level of bad faith. *Id.* at *15.

### C. *Despite the Unjustifiable Delay, the Court Will Not Exclude the Plaintiffs' Untimely Expert Report*

First, the Court concludes that despite the personal events taking place during this time period, the Pansinis had ample opportunity to request an extension to file an expert report, and they failed to do so. The relevant events are summarized in the chart below.

| **Date** | **Description** |
|---|---|
| June 29, 2018 | The parties jointly report that they will be attending a mediation on July 11, 2018 and request a 60-day extension of all deadlines. |
| July 6, 2018 | The Court denies the extension request but notes that the parties may extend any *discovery* deadlines without seeking leave of the Court. |
| July 11, 2018 | The mediation fails. |
| July 31, 2018 | Deadline for the plaintiffs to serve opposing counsel with expert reports. |
| Early/Mid August 2018 | Emails between counsel show that the parties are coordinating additional fact/expert discovery beyond the deadlines. |

| Date | Description |
|---|---|
| August 23, 2018 | The defendants' counsel asks the plaintiffs' counsel to allow the defendants' experts to conduct an inspection of the HVAC System. The defendants' counsel proposes the week of September 10, 2018 for the inspection and for the plaintiffs' depositions. |
| Late August/Early September 2018 | The plaintiffs experience what they call a sensitive personal medical event. No one is allegedly allowed in the plaintiffs' home after this time. |
| September 7, 2018 | The plaintiffs cancel their depositions, which were noticed for September 10, 2018. |
| October 19, 2018 | Deadline for *Daubert* motions and dispositive motions. The defendants file the pending motions for summary judgment on this date. The plaintiffs' counsel claims that he was blind-sided by these motions for summary judgment given that the parties had previously been cooperating. |
| October 27, 2018 | The plaintiffs' expert conducts an in-home inspection of the HVAC System. The defendants are not notified or permitted to have their own expert(s) inspect the HVAC System. |
| October 31, 2018 | The plaintiffs inform the Court that the plaintiffs' lead counsel is dealing with medical issues and request a 30-day extension to respond to the defendants' motions for summary judgment. Notably, the plaintiffs do not mention expert report issues in their request. The Court grants the plaintiffs' request. |
| November 26, 2018 | The plaintiffs' expert report is dated November 26, 2018. |
| November 30, 2018 | The plaintiffs serve the expert report on the defendants (without asking the Court for leave to do so). |
| December 5, 2018 | The plaintiffs attach the expert report to their responses in opposition to the defendants' motions for summary judgment (without asking the Court for leave to do so). |

The Court recognizes that in July and early August, the parties were cooperating with each other and seemed to agree that post-deadline discovery would be needed. But by late August 2018, plaintiffs' counsel knew that one of the Pansinis had experienced a self-described serious medical event that the plaintiffs claim prevented anyone from entering the Pansini home and was used as the reason given for the cancellation of the plaintiffs' depositions and the inspection of the HVAC System. From that time until the Court's dispositive motions deadline of October 19, 2018 (nearly

a two-month period), the plaintiffs could have, but did not, inform the Court and opposing counsel that issues had arisen or request an extension.

Later, on October 31, 2018, the plaintiffs did in fact request an extension of their deadline to respond to the pending motions for summary judgment because the plaintiffs' lead counsel had some serious medical issues. However, despite the fact that the plaintiffs' expert performed an inspection of the HVAC System at the Pansini home five days earlier on October 27, 2018—indicating that they knew at that time that they planned to submit an untimely expert report—the plaintiffs did not seek leave from the Court to do so. Rather, the plaintiffs served their untimely expert report on the defendants one month later. The record shows that the plaintiffs were aware of the Court's deadlines and certainly knew how to request an extension when needed, having taken advantage of the Court's indulgence before. Thus, although the Court is of course sympathetic to the plaintiffs and the plaintiffs' counsel for difficult events that may be occurring in their personal lives, their failure to keep the Court and opposing counsel apprised and request an extension was not substantially justified.[8]

Nevertheless, the exclusion of Mr. Haglid's expert report will not be ordered. Like the expert report in *Ciocca*, Mr. Haglid's expert report is supposedly critically important to the plaintiffs' claims. As the defendants themselves argue in their motions for summary judgment, the Pansinis must show that the HVAC System was defective to have an opportunity to succeed on their remaining claims. *See Altronics of Bethlehem v. Repco, Inc.* 957 F.2d 1102, 1105 (3d Cir. 1992). To establish a defect, the plaintiffs must show: "(1) that the product malfunctioned; (2) that plaintiffs used the product as intended or reasonably expected by the manufacturer; and (3) the

---

[8] The Court notes that Mr. Pansini is himself an attorney who presumptively understands the importance of discovery obligations and court-imposed deadlines. Thus, the plaintiffs' failure to communicate with Court and opposing counsel is particularly troubling.

absence of other reasonable secondary causes." *Id.* Furthermore, because the complex HVAC System at issue in this case is beyond the common understanding of an average juror, the plaintiffs will likely need expert testimony to prove that the HVAC System was defective. *Luppino v. Mercedes Benz USA*, 718 Fed. Appx. 143, 147 (3d Cir. 2017) (citing *Oddi v. Ford Motor Co.*, 234 F.3d 136, 159 (3d. Cir. 2000)).

The Pansinis have no other expert evidence concerning the HVAC System's alleged defects; consequently, excluding Mr. Haglid's report would result in the dismissal of their claims. Such an extreme sanction is disfavored. *See Konstantopoulos*, 112 F.3d at 719. Although the Pansinis failed to act responsibly, there is no evidence that they actually sought to willfully deceive the Court or the defendants or that they acted in a bad faith attempt to gain a tactical advantage, rather than, for example, to cure a slip-up. *See Ciocca*, 2011 U.S. Dist. LEXIS 90067, at *14–16 ("Although this conduct evidences questionable practices on the part of Plaintiff's counsel in failing to communicate either with Defense counsel or this Court, we do not find that it rises to the level of bad faith . . . .").

Moreover, although the untimely filing of Mr. Haglid's expert report prevented the defendants from being able to depose Mr. Haglid, find a rebuttal expert, or challenge Mr. Haglid through a *Daubert* motion before filing their motions for summary judgment, "this prejudice is one that is within [the Court's] power to cure by granting [the defendants] additional time within which to respond in full to the [expert's report], depose [the expert], or obtain [their] own expert." *Id.* at *11–13.

And finally, although this relief certainly will prolong the case, admitting Mr. Haglid's expert report will not unduly disrupt the trial of the case because no trial date certain has yet been set. *Id.* at *13. Instead of excluding Mr. Haglid's report and dismissing the plaintiffs' claims,

therefore, the Court will give the defendants forty-five (45) days to depose Mr. Haglid—at the plaintiffs' expense for counsels' reasonable preparation and attendance at such a deposition—and/or hire their own experts to inspect the HVAC System and submit expert reports and give the defendants an additional fifteen (15) days thereafter to file renewed motions for summary judgment and/or *Daubert* motions, if appropriate.[9]

## II. The Defendants' Motions for Summary Judgment

### A. *Legal Standard*

A court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cnty. of Bucks,* 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.* (citing *Anderson,* 477 U.S. at 248). Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the non-moving party and draw all evidences in that party's favor. *Id.* However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.,* 621 F.3d 249, 252 (3d Cir. 2010).

The movant bears the initial responsibility for informing the Court of the basis for the motion for summary judgment and identifying those portions of the record that demonstrate the

---

[9] The Court invites the defendants to move for additional reasonable financial sanctions against the plaintiffs. Examples of potential sanctions include paying for the defendants' briefing on the timeliness issue or, should the defendants' serve their own rebuttal expert reports, and should the plaintiffs insist on deposing the defendants' experts, paying for the experts' time during such depositions and the defendants' attorneys' fees.

13

absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986). Where the non-moving party bears the burden of proof on a particular issue, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. After the moving party has met its initial burden, the non-moving party must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322.

### B. *The Court Will Defer Ruling on the Defendants' Motions for Summary Judgment to the Extent They Challenge the Plaintiffs' Evidence of Defect or Supporting Damages*

The defendants argue that the plaintiffs' claims for breach of warranty, violation of the Magnuson-Moss Warranty Act, revocation, and breach of contract should be dismissed because the plaintiffs—without an expert report—did not produce sufficient evidence establishing that the HVAC System was defective or sufficient evidence establishing damages. However, as previously discussed, the Court will not exclude Mr. Haglid's expert report at this time. And although the defendants argued at oral argument and in their supplemental briefing that the plaintiffs' claims should be dismissed even if the Court admits Mr. Haglid's expert report because Mr. Haglid fails to articulate what attribute or component of the HVAC System is defective, fails to eliminate reasonable secondary causes for the alleged malfunction—such as improper installation by Mr.

14

Kanze—and fails to provide a basis for his damages calculations, the Court will defer these arguments for a later time after a more complete record is established. *See Nippo Corp./International Bridge Corp. v. Amec Earth & Envtl.*, Civ. No. 09-0956, 2011 U.S. Dist. LEXIS 34994, at *23–24 (E.D. Pa. Mar. 30, 2011) (explaining that the Court "has an interest in deciding summary judgment on a complete evidentiary record" and staying motions for summary judgment so that they can be renewed—"fully supplemented"—after additional expert discovery).[10]

### C. *The Court Will Dismiss the Plaintiffs' Breach of Contract Claims*

In Ferguson's partial motion for summary judgment filed in August 2018 and in Trane and Ingersoll Rand's motion for summary judgment filed in October 2018, the defendants also argue that the plaintiffs' breach of contract claims should be dismissed because they (Ferguson, Trane, and Ingersoll Rand) do not have a contractual relationship with the Pansinis. Also, during oral argument, Trane and Ingersoll Rand's counsel argued that the contractual provisions alleged to have been breached—if a contract between the parties existed at all—are the same as the warranties that the plaintiffs are relying on in their breach of warranty claims, thus making the plaintiffs' breach of contract claims entirely duplicative of their breach of warranty claims. Whether the breach of contract claims should be dismissed on these grounds does not hinge on Mr. Haglid's expert analysis. Because the plaintiffs' breach of contract claims are indeed duplicative of their breach of warranty claims, the Court will dismiss the breach of contract claims at this time.

In Count I of their amended complaint, the Pansinis bring a breach of warranty claim against Trane and Ingersoll Rand. They claim that Trane and Ingersoll Rand made "certain express

---

[10] The Court notes that all of these issues may be addressed by the defendants' able counsel during a deposition of Mr. Haglid.

and implied warranties," which were made "both orally and in writing," regarding the HVAC Systems' "reliability, merchantability, freedom from defects, that it is quiet, cost efficient, would control temperatures[] in specific rooms to make each room comfortable and was the appropriate and best HVAC system on the market for The Residence and that any deficiencies would be cured." They claim that Trane and Ingersoll Rand breached those warranties by failing "to deliver the subject system free from defects and by their failure to repair the defects within a reasonable time." The plaintiffs bring an identical breach of warranty claim against Ferguson in Count VIII of their amended complaint.

In Count VI of their amended complaint, the Pansinis bring a breach of contract claim against Trane and Ingersoll Rand. They claim that they entered into an agreement with Trane and Ingersoll Rand for the purchase of the HVAC System. In Mr. Panisni's affidavit, he claims that Brian McAleer, a Ferguson employee who was wearing a Trane uniform, "offered to sell [him] the New TRANE HVAC System and . . . promised and warranted that the system could independently control and vary temperatures from room to room, was economically the most efficient unit on the market, [and was] extremely quiet." Pansini Affidavit, at ¶ 12. Mr. Pansini further claims that "[b]ased on the offer made by Brian McAleer to sell [Mr. Pansini] the New TRANE HVAC System and in light of the promises and warranties communicated by him as part of the sales offer, [Mr. Pansini] accepted his offer and agreed to purchase the New TRANE HVAC System for its fair market price." *Id.* at ¶ 14. In their amended complaint, the plaintiffs claim that Trane and Ingersoll Rand breached the contract because the HVAC System "did not work as promised or as warranted" and because they "refused to make reasonable arrangements to rectify the breach." They bring an identical breach of contract claim against Ferguson in Count IX of their amended complaint.

The "contractual terms" identified by the Pansinis mimic the language they use in their breach of warranty claims, and they failed to present any evidence suggesting the existence of additional contractual terms breached by the defendants that are not already subsumed in the breach of warranty claims. Thus, as courts in this circuit have done before, the Court will dismiss the breach of contract claims as duplicative of the breach of warranty claims. *See Cooper-Booth Transp. Co., L.P. v. Daimler Trucks of N. Am., LLC*, Civ. No. 17-3884, 2018 U.S. Dist. LEXIS 69338, at *10–11 (E.D. Pa. Apr. 24, 2018) (dismissing breach of contract claims because they "rest[ed] on the same allegations as the warranty claims, and [were] therefore duplicative"); *Baynes v. George Mason Funeral Home, Inc.*, Civ. No. 09-153, 2011 U.S. Dist. LEXIS 59220, at *24 (W.D. Pa. June 2, 2011) (dismissing breach of contract claim as duplicative of a breach of warranty claim); *Pro-Spec Painting, Inc. v. Sherwin-Williams Co.*, Civ. No. 16-2373, 2017 U.S. Dist. LEXIS 73207, at *15 (D.N.J. May 15, 2017) (dismissing breach of contract claim because the plaintiff alleged "only that that [the defendant] breached the contract (i.e. the purchase order) by providing a defective product, which is also the basis for the breach of warranty claim").[11]

---

[11] Because the Court is dismissing the breach of contract claims as duplicative of the breach of warranty claims, it need not address whether the plaintiffs *in fact* had a contractual relationship with any of the defendants.

**CONCLUSION**

For the foregoing reasons, Ferguson's Partial Motion for Summary Judgment is granted, Trane and Ingersoll Rand's Motion for Summary Judgment is granted in part, and the plaintiffs' breach of contract claims are dismissed. The remainder of the defendants' motions for summary judgment are deemed moot, and the defendants may file renewed motions for summary judgment following additional discovery as discussed above. An appropriate order follows.

BY THE COURT:

  /s/ Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE